With that, let's get going with our cases. The first one is Meadows v. Lind, 19-1320. Ms. Esser, you may commence. Thank you. Good morning, and may it please the court and counsel. My name is Meredith Esser, and I'm arguing this case on behalf of Kenneth Meadows. In Mr. Meadows' state trial, at least four jurors were dismissed from jury service based solely on the fact that they were hard of hearing. Despite the bedrock principle that discrimination in the selection of jurors violates the Constitution, trial counsel failed to object to this discrimination on constitutional grounds. Nor did trial counsel insist upon a recess of the trial in order to obtain assistive hearing devices that were located just two hours away from the courthouse. These errors of counsel led to fundamental unfairness in Mr. Meadows' trial. I want to expand upon the errors of counsel. Counsel did note the issue and inquire about devices, but counsel failed to adequately preserve or constitutionalize his half-hearted objection that he made regarding the dismissal of jurors. In the district court's order, the district court said that counsel wasn't deficient because he, quote, wasn't completely ignorant of the impropriety of dismissing jurors solely on the basis of... Would a constitutional-based argument have really made a difference here? I believe that it would have, and the reason for that is I think that trial judges have a sort of knee-jerk reaction to hearing constitutionalized objections. So, for instance, I don't think it would have taken much time or even much thought for counsel to note the due process and equal protection implications of what was going on here, and I do think that trial judges have a sort of their ears perk up when counsel actually constitutionalizes objections and makes a record that informs the court, which is what counsel's duty is, informs the court of the implications of certain things that are going on during the trial. So, yes, I do think that it would have made a difference. Apparently, there was a Colorado provision that he might have prevailed on if he had asserted a Colorado constitutional claim. Is that right? That's correct. There is a but that's not your argument. I mean, your argument is strictly that he should have made a federal constitutional claim. Is that correct? I think that's my primary argument, although in my opening brief, I did note the Colorado constitutional issues as well as the Colorado statutory issues that were being implicated by the dismissal of jurors, but I think for my purposes here, the primary issues I think are the federal constitutional issues of due process and equal protection. Well, I was a little unclear from your brief. I didn't understand that you were saying that the deficiency was based in part even on a failure to allege a Colorado constitutional violation. Am I correct? Yes, I apologize for the lack of clarity. I think that I addressed the fact that there were several different levels of potential errors that were occurring, and I think the reason for that is that this is a pretty fundamental error and there are several. Yes, but I just want to be clear. In your argument below and here, you have not asserted any kind of a constitutional defect because counsel failed to assert a Colorado constitutional violation. Am I correct? Your brief said you were asserting an ABA claim and a U.S. constitutional claim. I think my opening brief addresses Colorado constitutional claims and statutory claims, but I could be mistaken. Well, the reason I'm concerned is the federal constitutional claim is an effective assistance of counsel, and I'm trying to decide if you have explicitly argued that counsel was ineffective federal claim in part because counsel did not specifically assert a Colorado constitutional objection, or are you alleging that counsel was ineffective only because he did not articulate a U.S. constitutional objection and an ABA objection? Um, my brief does note that, um... I'm not really interested in what you note, just as a fact. I'm interested in what you have asserted as an issue for us. I think the assertion is that all of those, uh, the Colorado constitutional issues as well as the statutory issues are implicated by counsel's errors. When we read the lower court objections and everything, reconsider everything on appeal, are we going to be satisfied that you have said that one of the reasons that counsel was ineffective was he failed to make and then fail to preserve claims of a Colorado constitutional violation? I thought it was simply that he failed to articulate specifically the federal constitutional objections. Your Honor, I'm looking at my, at my brief and I know you mentioned that you don't necessarily, uh, are concerned with what's exactly written. I do say on page 20 of my brief, I'm very concerned with what's actually written, um, that the, that there was unlawful and constitution, unconstitutional discrimination against dismissers under both state and federal law. So, um, perhaps I didn't articulate it as unlawful, but that issue was raised, um, under state law as well. All right. Thank you. Proceed. Mr. Esser, does it matter to follow up with Judge Abell's inquiry with regard to the state statutory basis? Does it matter that the Colorado court of appeals specifically said on page 11 of their order that the, that the state trial judge did comply with the state statute? Um, I think that the issue is that, uh, counsel's ineffectiveness was the error. And I think in other words, but I'm sorry to talk over you, but here's, here's what I don't understand about that. That answer is, uh, let's say Oklahoma law has a provision and I, and you say, well, attorney Bob Bacharach was ineffective in failing to assert this provision in Oklahoma law. Well, if the Oklahoma Supreme court, or in this case, the Colorado court of appeals says that on the merits, there was no violation by definition, how could it have been ineffective for failure to assert a Colorado statutory claim in which the highest court to our arbiter, this issue has said, Oh, there was no violation of Colorado law. Um, I, I understand your concern. I think that if, if the court would permit me to just review the court of appeals decision, um, I think that part of the issue is that the court said that there was no error in part because, um, defense counsel didn't object adequately. And so I do think that there is a little bit of overlap between the state statutory claims, um, and the federal constitutional claims. For example, um, on page 14 of the, um, Colorado court of appeals decision, um, the Colorado court of appeals says that they, that because defendant did not request a continuance, um, that the court perceived no abuse of discretion. So there was, um, a, uh, reason, part of the reasoning of the Colorado court of appeals in finding no abuse of discretion was directly linked to the errors of counsel in failing to specifically request a recess or continuance. Does that answer the question? Yes. But does it matter that the court that, that in the clause that you're talking about with regard to juror H, it goes on to say, and the court was unsure whether it could get the amplification device within a reasonable time for two of the veneer persons. Uh, I think it was Gary and Follett, the state trial judge specifically noted that he wasn't even sure, uh, this is a different boy, uh, whether or not amplification devices would even help. Is it, is it ineffective for purposes of prong one of if the trial judge has specifically acknowledged that he's not sure whether or not a hearing aid would even solve the problem, even if he were to adjourn or recess the trial? I mean, I don't think that that's dispositive because the judge wasn't sure. And I think that the issue is that there was an obligation to attempt to accommodate the jurors and no attempt was made. Um, I think if the, if the amplification devices were brought and, and the issue had not been resolved, um, I don't think that there would have been an effective assistance, but I think just atmospherically, even the prosecutor was concerned and offered to bring or have the, the devices brought up, uh, from the Fort Collins courthouse. Um, so I think in context, I don't, you know, the, the district courts sort of lack of, um, total shortness, that's not a word, but, um, that the devices would have helped. I don't think is dispositive because there was no attempt to accommodate the jurors. The district court found there was no actual prejudice here. And I just wonder what your view is. Um, uh, unless we presume prejudice for the structural error, um, you, how do you demonstrate or what, what would you point to that would show actual prejudice? Um, your honor, I think that in, in the district court proceeding in federal court in the federal habeas proceeding, um, Mr. Meadows conceded that a showing of actual prejudice wouldn't really be possible in this case. I think one way to conceive of it is a reasonable probability that if the objected, um, that there's a possibility that, uh, jurors would have, the jurors that were dismissed would have been seated or the, the, uh, jury panel would have looked different. Um, counsel didn't argue that below. So I do think that, um, the issue is really one of, of Weaver fundamental unfairness. Is there always a fundamental unfairness, um, in these circumstances, or is it more contextualized? I think that discrimination in jury selection is such a, uh, a fundamental issue that yes, in the, in the context of jury selection, if there's discrimination in jury selection, um, that should be considered fundamentally unfair in every case. And I think there is some, um, support for that in Weaver reading between the lines. Um, Weaver almost invites this particular claim. Uh, Weaver talks about, uh, that, um, specifically mentions discrimination in the context of jury selection as a structural error, doesn't decide whether or not that would require automatic reversal in the context of an ineffective assistance of counsel claim, but also makes a lot of statements about the policy implications of, um, of structural errors. And when, uh, what I think of is sort of akin to a fourth prong type of analysis, um, the need for, for integrity of the judicial system. And I think those kinds of things are, are inextricably linked to this issue of discrimination. You know, yeah, Weaver did suggest there might be a difference between, you know, I don't know if there's a distinction or not, but, um, how, how would you, um, you know, how would you articulate that, you know, these, these values are just as important where we sit now on collateral review them than they would be in a direct appeal. Um, I mean, I think again, I don't want to sound like a broken record, but just reading from Weaver, um, excuse me, uh, pervasive, pervasive undermining of the system, a systematic requirements of a fair and open judicial process. Um, that is, uh, an issue that's implicated by discrimination and jury selection. Um, and again, um, you know, I think if, if in this case, I think there's an issue of if I'm, if counsel or if Mr. Weaver needed, sorry, excuse me, Mr. Meadows needed to show actual prejudice, I think there's a, a danger of collapsing the fundamental unfairness, um, analysis with a need to show actual prejudice. And again, I think I am reiterating myself, but I think that because of our longstanding, that this court system's longstanding concern with, um, jury selection and fairness and jury fundamentally unfair in every case. I would like to, um, retain some rebuttal time. You may. Thank you. You're from the U. S. Attorney's office, Mr. Crane. Good morning, Your Honors. May it please the court. My name is Ryan Crane and I represent the Respondent Warden, uh, through the Attorney General of the state of Colorado as the respondents in this case. Your Honors, the clearest point on which the petitioner's argument fails is the deficient performance prong. The other two bases on which a petitioner's argument also fail are the exhaustion issue and the prejudice issue. However, those both require resolving uncharted and the reason it's clear that counsel performed at constitutional standards or above in this case is because counsel had a reasonable basis for handling the matter as he did. Counsel did not render deficient performance by objecting and then not insisting on a recess. That's really the only basis on which petitioner argues that he can show prejudice or that counsel really rendered deficient performance with respect to this proceeding. Mr. Crane. Go ahead, Bob. Oh, I'm sorry. Uh, I was just gonna ask, uh, with regard to the deficiency prong with two of the veneer persons, uh, Wamsley and Ballman, the Colorado Court of Appeals specifically said defense counsel had failed to object. So would you acknowledge at least for the deficiency prong that counsel did not make even an arguably sufficient objection on any ground to those two individuals? Well, what I would say is with respect to the claim petitioner is raising now, I mean, I can't contradict the way the Colorado Court of Appeals treated the objection on appeal. Petitioner is not arguing prejudice on appeal. Uh, what I would say is with respect to petitioner's argument here, uh, counsel performed sufficiently from the perspective of the defendant at the time of trial because the trial court said I recognize your objection with respect to the advice with respect to the devices. And essentially you have a standing objection on this issue. It's preserved. Uh, counsel had a reasonable basis to not do anything further. Well, he didn't mention his basis for his objection. He didn't state it was a U.S. constitutional objection. Yes. And I think not only is that a novel claim that I don't believe counsel had a duty to raise at that time because I haven't seen any opinion, uh, reaching that conclusion. And I don't believe counsel has a duty to raise novel claims. However, that really ultimately the biggest reason why it's not deficient performance here is you don't have to explain the basis for an objection in order to prove with respect to showing prejudice at trial. The reason a failure to object at trial results in in Strickland prejudice is because it allows evidence to come in or something to happen that would not have happened if you had properly objected. For example, the usual cases failing to object to inadmissible evidence, evidence clearly inadmissible. It came in. We look at the evidence of guilt and that how this evidence was, what would have happened differently at trial? What would the jury have done? Structural error originates when we say that the error is the one that's incapable of our being able to make a judgment about how prejudicial it was or not. You got a bad juror. We just don't know what would happen if you'd had a better juror. So it's a structural error here. If there is an error, the argument would be that we just don't know how the outcome would have been different if we had had these other jurors in the pool. They may or may not have gotten selected, but we can't. We can't. Unlike a piece of evidence that we can just look at and say, no, nobody would worry about that piece of evidence here. It leads to an unknowable prejudice, and that's why typically we call things structural. I agree, Your Honor, and that's the that's the prejudice issue that the Supreme Court addressed in Weaver with respect to, and I'm happy to talk about that further as well, but just to finish up the point that I wanted to make sure it's clear on deficient performance is it's not deficient performance for counsel to have done what he did here because counsel lodged the objection and the trial court offered a curative measure. So it wasn't like counsel didn't object and so evidence just came in or counsel didn't object and so the court or the court said, I don't even understand what you're talking about about devices. Move on. What was the security of the court specifically ordered? That is the court throughout the idea of, I guess we could recess to bring the devices here. I know we have them in other parts of the district, but not here. But then didn't the court follow up with that by saying he didn't think that was a good idea because he couldn't get there in time? The court did offer its opinion that I don't think the devices would even help because I have familiarity with this. I've done it before and I haven't found them to be very helpful. Here, for example, with this juror, she's standing four feet from me or sitting. She's four feet from me. I'm speaking as loud as I can. I don't think the devices are going to help. In my experience, they're not that helpful. So the court did offer that opinion, but also at one point threw out the idea itself of, I guess we could recess and have them brought in. Defense counsel could have said, yes, absolutely. I insist on it right then. Counsel could have brought it up later after thinking about it or even the next morning. Doesn't that accentuate the potential ineffectiveness? I mean, if that suggests that the court would have been respective to a request to wait, doesn't that hurt your case rather than help it? No, your honor. What it shows is that the trial court gave an option and counsel made a reasonable decision. As he noted, as he agreed, in the evidence you're hearing below in the U.S. District Court, he agreed, yes, it would have been a strategic decision because even though I don't remember my exact reasoning, I certainly knew at the time I could ask for a recess. He was an experienced public defender. He'd been practicing for years. He'd done felony cases. He agreed, I knew I could do that and I would have if I thought it would have gained any advantage for the defense. So that indicates he took the decision in the exercise of strategy, which is what Strickland presumes anyway. And we then look to what were the possible motives for him making that decision? Are there reasonable bases for that decision? And there surely were in this case, because knowing that he had preserved the issue for appeal, he knew it could be raised later. And because this didn't allow any obviously biased or bad jurors going on and he retained all his peremptory strikes and challenges for cause, he knew that he could then continue on with jury selection, keep that issue for appeal, and then avoid the possibility of annoying the jurors and the judge, the decision makers in his case. If he was really preserved for appeal, like you're saying it was, was he ineffective at the appellate level by not raising this issue at the appellate level? Petitioners, appellate lawyers? I don't know. That issue is not addressed. It's not raised by petitioner. It would have been procedurally defaulted. And the reason this claim is not defaulted is because of Martinez v. Ryan, because it's alleging ineffective assistance with respect to trial counsel. And so the effectiveness of direct appeal counsel in not raising this claim, this precise claim on direct appeal, even though they did raise other claims, that's other claims and related to this issue. But that's not an issue before the case. And so it's never been the question that Judge Ebell asked about, you know, the actual prejudice here would be hard, hard to measure. That's why, you know, that's why structural error goes in the direction of a presumed prejudice, because it would be an impossible burden for you know, defendant to show error, really any kind of, you know, discriminatory jury selection practice. You know, how do you know? And, you know, that's why, you know, the Supreme Court has said, well, you can't know, so we're going to presume prejudice. And, you know, that's just what, you know, that's the price we pay, you know, in our system when we have errors that are of the judicial proceeding. So why shouldn't the right call here be to presume prejudice? And the reason, Your Honor, is, and that's the issue that the court, of course, addressed in Weaver. And what the court said was there are some contexts in which, well, errors are structural for one of three reasons. One is that they always create a fundamentally unfair trial for the defendant in every case, like having a biased juror or having no reasonable doubt instruction given to the jury. But there are other reasons too. Number one, protects rights other than those of the defendant at trial to fairness, like the right of the public and access to the courts. Or sometimes it's difficult to measure the effect of the error. And the Supreme Court has said in certain cases, it's just not worth the time delving into whether, for example, denial of counsel of choice resulted in a different, a reasonable probability of a different result, or I guess in the direct appeal context, whether it's harmless beyond a reasonable doubt. So in Weaver, the court said, we're looking at the right to a fair trial, and this is a structural error, not because it always creates a fundamentally unfair trial to the defendant with respect to guilt, but it protects rights other than the defendant, such as the right of access to the courts, and it protects, and it's difficult to measure the effect of the error. If this is a structural error, which respondents, we have assumed for the sake of this case and argument, if it is a structural error, it is for one of those same reasons, a structural error, that the right to a jury trial, or sorry, the right to public trial is, as in Weaver. Well, the Supreme Court in arriving at that conclusion, specifically reasoned that there were exceptions to the exceptions, and so it couldn't always result in a fundamentally unfair trial to compromise that particular constitutional right. So applying that same reasoning here, what exceptions are there to the constitutional requirement that a trial judge cannot arbitrarily exclude individuals of a particular class, like disabled persons or hard of hearing persons, without reasonable accommodations? Yes, Your Honor, I understand. You know, I'm not sure there are exceptions to an arbitrary and discriminatory proceeding. I don't, my response, however, is I don't believe that's the ultimate or the only basis on which the court in Weaver said that this, that you have to show prejudice in a case like this. I think the primary reasoning that the court relied on was not that there are exceptions. What it said was there are exceptions, and that suggests that there may be reasons that this, that a public trial is a structural error when it's violated because of reasons other than just it's always fundamentally unfair to the defendant. Race and gender discrimination, they can be viewed, I think, as always fundamentally unfair to the defendant himself. I think we're getting a little further away when we discuss the exclusion of four hard of hearing jurors in a case like this. I'm not going to say there are exceptions to it, but what I do think is the reason that an error like this would be structural is not because it always creates a fundamentally unfair trial to the defendant with respect to guilt or innocence at trial. And I will note on page 48 of the answer brief, Parks v. Chapman, the Sixth Circuit did address a similar claim to this in the Batson context. It is an unpublished decision, but the court in June of 2020, post-Weaver, addressed a deficient performance and, or sorry, an ineffective assistance claim where counsel did not raise a Batson objection with respect to four African-American jurors. The court found no deficient performance and no prejudice, and I would refer the court to that case, which is cited on page 48 of the answer brief, as kind of a roadmap if it wants to get more into this issue of prejudice. Is there any reason to think on the, on your procedural argument, you know, I, you know, there's some appeal to letting, you know, Colorado sort this out in the state courts, but is there really a reasonable, you know, let's assume I agree with you that there's not a procedural bar anticipatorily anyway, and we allow it to go forward in state court. Would Colorado get to answer the question about whether there was prejudice here? Yeah, I don't know, Your Honor, and that's why I emphasized in the brief, I think it's very unclear under Colorado law, and that's my main point. I can't say, having practiced in the Colorado appellate criminal system for over 10 years, I can't say for sure what the trial court would do here. I think Colorado law is not 100% clear, and I know that trial courts in Colorado, as you probably know, have a lot of discretion in this area because it's not entirely clear, so I think it would be inefficient because the case would have to go back, be decided, then come back here, and I think because this court can deny a claim even when it's unexhausted, and because the deficient performance prong here is so clear, I think that's a much more efficient way to resolve this case, but I don't know. I'm confused about that. It did not seem to me that Colorado could or would take this case. Just in 10 seconds, what would be the route that Colorado would use if they allowed it? Would it be a new habeas they would allow or an amendment to a habeas that's already been disposed of or what? Yes, the route that they would get there is petitioner has already filed a 35c post-conviction motion before raising ineffective assistance. It's never been resolved, and he can now ask the court to rule on the claim now that his prior appeal is concluded. The court has jurisdiction to take up the motion. Colorado rules require the court, if it doesn't, summarily dismiss that motion to appoint counsel, and the rules require the court to allow counsel to add claims where he could then add this claim. All right, counsel, your time's expired. I apologize for misassigning you to the U.S. Attorney's Office instead of the Colorado Attorney General's Office, which I'm quite fond of. No offense, your honor. Thank you. Miss Ester, could you give her 60 seconds, please? Thank you, your honor. Just briefly, respondent mentioned that the claim of the due process and equal protection claims were novel claims. The district court in this case actually found that these were not novel claims and that there was settled law at the time of Mr. Meadows' trial on both the due process clause and the equal protection issue. That's on page 642 of the record. In addition, respondent's position is that a curative measure was offered by the district court, but it was not reasonable for trial counsel in this case to reject that offer of accommodation, especially when the prosecutor was also on board with the idea of recessing and attempting to accommodate the hard-of-hearing jurors. If that's the error, then there's no question. No, I don't want to do that. You are running out of time. I didn't really mean to take your precious time. So with Chief Judge's permission, maybe we could give her another 30 seconds. Sure. Yeah, please ask and answer the question. What I'm saying is I don't want to pursue the question because it's taking too much of her time. Okay. My last comment was just going to be about whether or not the issue was actually preserved. I think Judge Bacharach in part addressed this issue, but it's pretty clear from the Court of Appeals decision that if the counsel did not preserve these issues, there were several grounds that were raised related to the jury dismissal issue by his lawyer, his appellate lawyer, and the Colorado Court of Appeals found plain error on the majority of those issues. Thank you. All right, counsel, appreciate your arguments. You are excused and the case will be submitted.